UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANDRO LEONEL GONZALEZ, CDCR #V-74928,<br><br>         Plaintiff,<br><br>vs.<br><br>F. ARMENTA; A. JONES; R. DAVIS; J. JUAREZ; A. ALLAMBY; S. ANDERSON; A. CUEVAS; J. LUNA; M. TAMAYO; G. HOLT; DANIEL PARAMO, et al.,<br><br>         Defendants. | Case No.: 3:16-cv-02494-JAH-JLB<br><br>**ORDER DISMISSING SECOND AMENDED COMPLAINT AS FRIVOLOUS AND FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B)(ii) AND 1915A(b)(1)** |

**I. Procedural History**

On October 3, 2016, Leandro Leonel Gonzalez, ("Plaintiff"), currently incarcerated at Salinas Valley State Prison in Soledad, California ("CAL"), and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1). Plaintiff also filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 3), along with a Motion to Appoint Counsel (ECF No. 2).

The Court granted Plaintiff's Motion to Proceed IFP, denied his Motion for Appointment of Counsel and dismissed his Complaint for failing to state a claim upon which relief may be granted. (ECF No. 6. at 15-16.) Plaintiff was given leave to file an amended complaint in order to correct the deficiencies of pleading identified in the Court's Order. (*Id.* at 16.) On February 24, 2016, Plaintiff filed his First Amended Complaint ("FAC"), along with a Motion for Preliminary Injunction/Temporary Restraining Order. (ECF Nos. 11, 13.)

Once again, however, the Court found that Plaintiff's FAC was frivolous and he failed to state a claim upon which relief could be granted. (ECF No. 14 at 15.) In addition, Plaintiff's Motion for Preliminary Injunction was denied. (*Id.*) Plaintiff was given one final opportunity to file an amended pleading. (*Id.*) On May 10, 2017, Plaintiff filed his Second Amended Complaint ("SAC"). (ECF No. 16.)

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

As the Court previously informed Plaintiff, because Plaintiff is a prisoner and is proceeding IFP, his SAC also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668

2

3:16-cv-02494-JAH-JLB

F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his SAC. *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

### B. Plaintiff's Allegations[1]

Plaintiff alleges that he was previously housed at the Richard J. Donovan Correctional Facility ("RJD") from 2014 to February of 2016. (*See* Compl. at 1.) On

---

[1] The Court will refer to the factual allegations contained in Plaintiff's original Complaint as was previously set forth in the January 19, 2017 Order in light of the fact that his factual allegations have not substantially varied in either the FAC or SAC.

3

3:16-cv-02494-JAH-JLB

January 12, 2014, Plaintiff was summoned to the program office by Defendant Armenta. (*Id.* at 4.) Armenta asked Plaintiff if he had been writing letters to Tamara Ecclestone ("Ecclestone"). (*Id.*) Plaintiff admitted that he had. (*Id.*) Armenta told Plaintiff to stop righting these letters or he would be placed in the Secured Housing Unit ("SHU.") (*Id.*) Plaintiff disagreed with Defendant Armenta and claims he has a "love affair" with Ecclestone and "he knows that [Ecclestone] did not [have] any complaint to him." (*Id.*)

Following the meeting with Armenta, Plaintiff wrote another letter to Ecclestone on February 11, 2014. (*Id.*) Approximately two weeks later, on February 26, 2014, Plaintiff was called back to the program office, at which time Armenta told him that he was placing him in the SHU for writing the letter to Ecclestone. (*Id.*) The following day, Armenta informed Plaintiff that he was being charged with a disciplinary violation for harassing someone through the mail. (*Id.* at 5.)

On March 7, 2014, Defendant Jones informed Plaintiff that she was assigned as the "Investigative Employee" and she would be in charge of gathering "pertinent information." (*Id.*) Jones gave Plaintiff a copy of the Rules Violation Report ("RVR"), written by Armenta, that contained the specific charge of "harassment of another person directly via mail." (*Id.*) The RVR contained the statement that "Mr. Holt explained that Mrs. Ecclestone does not know Inmate Gonzalez nor does she want to know him and was concerned about the possibility of you getting out and carrying out your fantasies." (*Id.*) Plaintiff contends these claims were "fabricated" and reported "without the authorization, permission or consent of Mrs. Tamara Ecclestone." (*Id.*) When asked if Plaintiff needed witnesses for his hearing, he indicated that he needed Ecclestone as his witness. (*Id.*)

Plaintiff continued to inform Jones over the following weeks that he needed Ecclestone as his witness and claimed that Ecclestone did not make the accusation of harassment. (*Id.*) Plaintiff alleges Jones denied his constitutional rights because she denied Plaintiff the opportunity to obtain "discovery of potentially exculpatory answer." (*Id.* at 6.) On April 3, 2014, Defendant Lewis came to the SHU, introduced himself to Plaintiff as the Senior Hearing Officer and Plaintiff gave him a written statement of his

defense. (*Id.*) Davis asked Plaintiff some questions but Plaintiff found them difficult to answer because he speaks limited English. (*Id.*)

Plaintiff claims that Defendant Davis acted with "callous indifference" when he "accepted" the reporting of Armenta and Jones and disregarded his statement at the disciplinary hearing. (*Id.*) Plaintiff had requested Ecclestone as a witness to dispute the charges that he was harassing her but he was informed at the hearing that the witness was "unavailable." (*Id.*) Plaintiff explained to Davis that he has being writing to Ecclestone since 2012, "including hundreds of letters because he was writing a poetry book to her (writing poems, rhythms, deep feelings, etc.) and was unfair that in 2014 a third party fabricated this accusation of harassment." (*Id.*)

Plaintiff was found guilty of violation of § 3005(a) of Title 15 of the Code of Regulations for the "specific harassment of another person directly via mail." (*Id.* at 7.) Plaintiff was assessed "30 days of forfeiture of credit, 10 days loss of yard in SHU," and was sentenced to a 12 month SHU term. (*Id.*) This finding was upheld by Defendant J. Juarez, Associate Warden, on April 27, 2014. (*Id.*)

Plaintiff filed an administrative grievance challenging the findings of the disciplinary hearing. (*Id.* at 8.) On June 6, 2014, Defendant A. Allamby interviewed Plaintiff with regard to this grievance. (*Id.*) Plaintiff "thought Allamby would fix the acts" of the Defendants but on June 15, 2014, Plaintiff's grievance was denied at the second level of review. (*Id.*)

Plaintiff submitted his grievance to the third level of review. (*Id.* at 9.) On October 21, 2014, the appeal office "submitted a modification order" directing Plaintiff's RVR to be "Reissued/Reheard." (*Id.*) On November 23, 2014, Plaintiff appeared before Defendant S. Anderson for his rehearing. (*Id.*) However, Plaintiff claims Anderson "recklessly denied" Plaintiff his right to have his witness. (*Id.*) Plaintiff was again found guilty. (*Id.* at 10.)

/ / /

/ / /

On November 25, 2014, Plaintiff submitted a "Health Care Services Request Form" in which he sought mental health treatment. (*Id.*) One month later, Plaintiff was placed in "EOP due to his mental and emotional injuries." (*Id.*)

Plaintiff filed another administrative grievance on January 16, 2015 claiming that the rehearing violated his constitutional rights because there was no investigative employee assigned. (*Id.*) Plaintiff was interviewed by Defendant A. Cuevas. (*Id.* at 11.) Plaintiff was able to speak to him in Spanish and claimed that Ecclestone "did not make direct or indirect the allegation of harassment." (*Id.*) Plaintiff claims this charge was made by "Mr. G. Holt, a supervisor from Solution Group International, in complicity with Defendant Armenta without the authorization, permission or consent of Mrs. Tamara Ecclestone." (*Id.*) When Cuevas asked Plaintiff if he ever received correspondence from Ecclestone, he admitted that he had not. (*Id.*) However, he claims Ecclestone "took some photographs of herself and placed on the internet," and someone named "Barbara J. Nagle" downloaded these photos and sent them to Plaintiff. (*Id.*) Plaintiff claims that Cuevas denied his second level of review of his grievance with "callous indifference." (*Id.*)

Plaintiff submitted his grievance to the third and final level of review on April 26, 2015. (*Id.*) Plaintiff argued that his due process rights were violated because there was no investigative employee assigned for his rehearing. (*Id.*) On September 4, 2015, Plaintiff's appeal was granted in part and a finding was made that his due process rights were violated by the absence of an investigative employee at his rehearing. (*Id.*) It was directed that the RVR disciplinary hearing be "reissued and reheard." (*Id.* at 12.)

Jones was again assigned as Plaintiff's investigative employee for the rehearing of his RVR. (*Id.*) Plaintiff gave Jones a list of nine questions that he wanted to ask of Ecclestone. (*Id.*) These questions included "[a]bout the month of July in 2013, that is the month of Leandro Gonzalez's birthday, did you pose for some photographs that you wanted Leandro Gonzalez seen?" and "[i]n those photographs were you trying to send a message to Leandro Gonzalez in answer to the letters that he sent to you?." (*Id.*)

On October 22, 2015, Plaintiff was given a copy of Jones' investigative employee report. (*Id.* at 13.) Jones told Plaintiff that Defendant Luna, the "appointment hearing officer" conducted the investigation, she did not "attempt to locate the witness." and she gave the questions by Plaintiff to Luna. (*Id.*) On October 25, 2015, Plaintiff's RVR hearing was conducted, his request for a translator was denied but Plaintiff was able to provide a written statement. (*Id.*) Luna found Plaintiff guilty of the charges. (*Id.*)

Plaintiff filed another grievance on November 9, 2015. (*Id.* at 14.) Plaintiff sought a new hearing and a request that Ecclestone be interviewed to "answer his 9 questions to prove his innocence." (*Id.*) Plaintiff was interviewed by Defendant Tamayo. (*Id.*) Tamayo denied Plaintiff's grievance. (*Id.*) Plaintiff submitted the appeal to the third level of review. (*Id.*) Plaintiff's appeal was denied at the final level of review on June 13, 2016. (*Id.*)

C. **First Amendment claims**

First, Plaintiff claims Defendants Holt and Armenta "violated Plaintiff's right to freedom of speech" by their "action of prohibiting Plaintiff from sending mail to Mrs. Tamara Ecclestone who never requested that mail not be received from Plaintiff." (SAC at 13.)

Prisoners do have the right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). In determining whether Plaintiff has adequately stated a First Amendment claim, the Court must analyze the jail regulations under the *Turner* factors. *Id*. In *Turner*, the Supreme Court held that a jail or prison may adopt regulations that impinge on First Amendment rights if the regulations are "reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987). To determine whether a prison regulation is reasonably related to a legitimate penological interest, the Court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources

7

generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *Turner*, 482 U.S. at 89-90.

Therefore, to state a plausible claim for relief under the First Amendment, Plaintiff's SAC must allege facts sufficient to show that the regulation supporting his disciplinary conviction (CAL. CODE REGS., tit. 15 § 3005(a)) was not "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. It does not. Plaintiff's SAC, and the Exhibits attached, indicate that his claims regarding a "relationship" with Ecclestone, as well as his claim that Ecclestone "never requested that mail not be received from Plaintiff" are not founded in reality. Plaintiff also admits that he was "writing hundreds of letters to Tamara since beginning 2012 because he was writing a poetry book for her." (SAC at 6.)

"[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact. . . . [The] term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). When determining whether a complaint is frivolous, the court need not accept the allegations as true, but must "pierce the veil of the complaint's factual allegations," *Id.* at 327, to determine whether they are "'fanciful,' 'fantastic,' [or] 'delusional,'" *Denton*, 504 U.S. at 33 (quoting *Neitzke*, 490 U.S. at 328). Based on Plaintiff's fantasies regarding his relationship with Ecclestone, it appears that Defendants' decision to deny him the right to correspond with her had a legitimate penological purpose.

Moreover, even if Plaintiff did allege facts to suggest Defendants' decision to deny his right to correspond with Ecclestone served no legitimate penological purpose, courts nevertheless "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them,"

8

*Overton v. Bazzetta*, 539 U.S. 126, 132 (2003), and "[t]he burden . . . is not on the State to prove the validity of [a] prison regulation[] but on the prisoner to disprove it." *Id.* (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977)).

Thus, because Plaintiff offers no "factual content that allows the court to draw the reasonable inference" that Defendants decision to deny him the right to correspond with Ecclestone was in the absence of any legitimate penological purpose, *see Iqbal*, 556 U.S. at 678; *Turner*, 482 U.S at 89, the Court finds his First Amendment claim subject to sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

### D. Eighth Amendment claims

Plaintiff also claims Defendants imposed cruel and unusual punishments upon him by "their action of placement in segregation SHU for 245 days without the correct due process, injured Plaintiff's personal liberty." (SAC at 14.)

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). To show a violation of the Eighth Amendment, Plaintiff must allege facts sufficient to show that the Defendant prison officials he seeks to sue acted with "deliberate indifference," *i.e.*, that they actually knew of and disregarded a substantial and serious risk that he would be harmed. *E.g., Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Prison officials "must provide humane conditions of confinement," including "adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832-33.

The fact that Plaintiff was housed in the SHU, lost custody credits, and lost yard privileges, by itself, does not support an Eighth Amendment claim. Plaintiff fails to allege plausible facts to show that these disciplinary punishments posed a serious threat

9

3:16-cv-02494-JAH-JLB

or "substantial risk" to either his health or his safety. *Farmer*, 511 U.S. at 837. "[T]here must be a conscious disregard of a serious risk of harm for deliberate indifference to exist." *Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir. 2004).

Therefore, the Court finds that Plaintiff's SAC fails to state a plausible claim for relief under the Eighth Amendment. *See Iqbal*, 556 U.S. at 678.

### E. Fourteenth Amendment

Plaintiff also alleges that his due process rights were violated during his initial disciplinary hearing and the subsequent rehearings because he was denied Ecclestone as a witness in any of these hearings. (SAC at 16.) Plaintiff claims Defendants violated his due process rights by "knowingly and recklessly present[ing] false information" and claims they "committed perjury." (*Id.*)

Insofar as Plaintiff challenges the fairness and validity of the disciplinary proceedings which resulted from his RVR on grounds that Defendants were required by the Fourteenth Amendment to provide him with a witness and an investigative employee to assist his defense, he also fails to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

The Due Process Clause protects prisoners against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted).

Although the level of the hardship must be determined in a case-by-case determination, courts look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez,* 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v.*

*Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if an inmate has alleged facts sufficient to show a protected liberty interest does the court next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez,* 334 F.3d at 860.

As currently pleaded, because he has alleged that he was housed in the SHU for more than eight months, the Court will presume that Plaintiff's SAC demonstrates a protected liberty interest because he has alleged facts to plausibly show that the disciplinary punishment he faced amounted to any "atypical and significant hardship in relation to the ordinary incidents of prison life." *Id.*; *Sandin*, 515 U.S. at 584; *Ramirez*, 334 F.3d at 861.

However, even if Plaintiff has alleged facts sufficient to invoke a protected liberty interest under *Sandin*, he fails to plead facts to plausibly show he was denied the procedural protections the Due Process Clause requires. *See Iqbal*, 556 U.S. at 678; *Ramirez,* 334 F.3d at 860 (citations omitted); *see also Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014). Those procedures include: (1) written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the fact-finder of the evidence relied on and reasons for the disciplinary action; (3) the right to call witnesses and present documentary evidence if doing so will not jeopardize institutional safety or correctional goals; (4) the right to appear before an impartial body; and (5) assistance from fellow inmates or prison staff in complex cases. *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974); *Serrano v. Francis*, 345 F.3d 1071, 1079-80 (9th Cir. 2003).

Plaintiff has attached the Third Level Decision, dated October 13, 2014, in which it was found that Plaintiff's "was not afforded due process" during his first hearing. (*See* SAC, ECF 16-1, at 2-3.) At this level of review, RJD officials were ordered to reissue and rehear Plaintiff's RVR. (*Id.*) This did occur but Plaintiff appealed again relating to the issue of the failure to provide an investigative employee at his second RVR hearing. At the final level of review, once again RJD officials were told to reissue and rehear Plaintiff's RVR. (*See* ECF 16-3 at 2, Third Level Appeal Decision dated Sept. 4, 2015.)

11

3:16-cv-02494-JAH-JLB

At this final hearing on his RVR held on October 17, 2015, Plaintiff's own exhibits show, he was provided notice, given a written statement of the charges, presented with documentary evidence supporting the charge and provided an opportunity to defend. (ECF No. 16-7 at 17-18.) Plaintiff argues that the decision to find him guilty was not based on "any credible evidence." (SAC at 17.) *Wolff* does not require either judicial review or a "specified quantum of evidence" to support the fact finder's decision. *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454 (1985). Rather, a prison disciplinary board's findings are upheld where they "are supported by some evidence in the record." *Id.* at 454-55. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-56). Here, the exhibits attached to Plaintiff's SAC are sufficient to show his disciplinary conviction was supported by "some evidence." *Hill*, 472 U.S. at 454-55.

In addition, Plaintiff claims his due process rights were violated by Defendants refusal to allow him to call Tamara Ecclestone as a witness as Plaintiff claims she would provide "potentially exculpatory answers to corroborate Plaintiff's defense." (SAC at 16.) However, *Wolff* holds that there is no "unrestricted right to call witnesses from the prison population" and thus, it would not be plausible to suggest that Plaintiff has an "unrestricted right" to call a witness outside of the prison population. *Wolff*, 418 U.S. at 566.

Accordingly, the Court finds that Plaintiff's SAC fails to state a procedural due process claim as to any Defendant because Plaintiff received all the process he was due; therefore, his Fourteenth Amendment claims are also subject to sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

/ / /

/ / /

### III. Conclusion and Order

The Court dismisses Plaintiff's Second Amended Complaint and this civil action in its entirety as frivolous and for failing to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), denies leave to further amend as futile, *see Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."), certifies that an IFP appeal of this Order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and directs the Clerk of Court to enter judgment and close the file.

**IT IS SO ORDERED**.

Dated: May 26, 2017

HON. JOHN A. HOUSTON
United States District Judge